Kang Joo KWAN and Se Jeik Park,
Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 01–1104.

United States Court of Appeals,
Federal Circuit.

Nov. 27, 2001.

Stewart J. Eisenberg, Weinstein, Goss, Schleifer, Eisenberg, Winkler & Rothweiler, P.C, of Philadelphia, PA, for plaintiffs-appellants.

Michael S. Raab, Attorney, Appellate Staff, Civil Division, Department of Justice of Washington, DC, for defendant-appellee. With him on the brief was Mark B. Stern, Attorney, Appellate Staff.

Before MAYER, Chief Judge, NEWMAN and RADER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Kang Joo Kwan, for himself and as representative of Korean veterans of the Vietnam conflict, and Se Jeik Park, for 270 members of the Korean National Assembly, seek payment by the United States of moneys asserted to have been promised to Korean veterans of the Vietnam conflict but not paid. The United States District Court for the Eastern District of Pennsylvania held that Messrs. Kwan and Park lack standing to enforce a government-to-government obligation, and that their claims are nonjusticiable political questions.[1] We affirm that decision. The district court also dismissed the Republic of Korea as a party; no objection has been raised to that dismissal.

## DISCUSSION

This action arises from the participation in the Vietnam conflict of military forces from the Republic of Korea. Various inter-governmental documents relate to this participation. Of direct relevance is a letter from United States Ambassador to Korea Winthrop G. Brown to the Korean Minister of Foreign Affairs dated March 4, 1966, wherein the United States agreed to provide military and economic assistance and also to pay the Republic of Korea "death and disability gratuities resulting

---

1. *Kwan v. United States,* 84 F.Supp.2d 613 (E.D.Pa.2000).

from casualties in Vietnam at double the rates recently agreed to by the Joint United States Republic of Korea Military Committee." This letter is herein called the Brown Commitment. It was discussed and reported in *United States Security Agreements and Commitments Abroad, Republic of Korea: Hearings Before the Subcomm. on United States Security Agreements and Commitments Abroad of the Senate Comm. on Foreign Relations,* 91st Cong., 2d Sess. Part 6 (1970). The district court reports, citing these *Hearings,* that pursuant to the Brown Commitment the United States paid death and disability payments to the Republic of Korea, through the Minister of National Defense, of $10.5 million. The appellants state that the United States has "refused to pay," [2] and seek payment directly from the United States to eligible recipients. Suit was filed in the district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).

■ The Brown Commitment concerns an arrangement between the government of the United States and the government of the Republic of Korea. As an instrument of foreign affairs, it is called an "executive agreement." Although not a treaty, treaty principles have been applied to interpreting executive agreements. In *United States v. Belmont,* 301 U.S. 324, 330–331, 57 S.Ct. 758, 81 L.Ed. 1134 (1937) the Court explained that "an international compact ... is not always a treaty which requires the participation of the Senate," analyzing an executive agreement on treaty principles. In *Weinberger v. Rossi,* 456 U.S. 25, 30 n. 6, 102 S.Ct. 1510, 71 L.Ed.2d 715 (1982) the Court reiterated that although the term "treaty" has a restrictive definition in the Constitution, executive agreements lacking the formalities of the Treaty Clause "may in appropriate circumstances have an effect similar to treaties." *See also, e.g., Bank Melli Iran v. Pahlavi,* 58 F.3d 1406, 1408 (9th Cir.1995) ("Executive agreements ... are interpreted in the same manner as treaties and reviewed by the same standard."); *Air Canada v. United States Dep't of Trans.,* 843 F.2d 1483, 1486 (D.C.Cir.1988) (interpreting an international executive agreement "according to the principles applicable to treaties").

■ When the foundation document is an agreement between governments, nongovernmental entities can not ordinarily challenge either their interpretation or their implementation, in the absence of express authorization for such private action. The Court in the *Head Money Cases (Edye v. Robertson ),* 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884), explained that the judicial courts do not have the power to enforce a treaty that does not confer a private right of action:

> A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamations, so far as the injured party chooses to seek redress, which may in the end be enforced by actual war. It is obvious that with all this the judicial courts have nothing to do and can give no redress.

*Id.* at 598, 5 S.Ct. 247. *See also, e.g., United States v. Li,* 206 F.3d 56, 60 (1st Cir.2000) (*en banc* ) (recognizing divergent conclusions as to whether the Vienna Convention creates privately enforceable rights in the federal courts); *United States*

---

**2.** The district court "presumed" that the present action was directed primarily to the issue of Agent Orange compensation and late-developing illnesses. Although the appellants do not so state or limit their action, we will also so presume, for otherwise there may arise statute of limitations issues that have not been considered.

*ex rel. Lujan v. Gengler,* 510 F.2d 62, 67 (2d Cir.1975) (even when a treaty provides certain private benefits, such as fishing rights, under international law any rights are those of nations, and any individual rights are derivative through the nation).

■ The district court correctly held that the Brown Commitment, even if viewed as a treaty, permits no private right of enforcement by or on behalf of Korean veterans who may be its beneficiaries. Since the obligations in the Brown Commitment were not legislatively executed, they can not be judicially enforced. *Foster v. Neilson,* 27 U.S. (2 Pet.) 253, 314, 7 L.Ed. 415 (1829) ("[W]hen either of the parties engages to perform a particular act, the treaty addresses itself to the political, not the judicial department; and the legislature must execute the contract before it can become a rule for the Court.")

The appellants argue that this case is similar to others in which courts have determined that a particular treaty did, in fact, provide a private right of action. The authorities to which the appellants refer concern, variously, a criminal defendant's right to raise the defense that his prosecution would violate extradition treaties or human rights treaties, and the rights of a foreign citizen provided by treaties concerning property and inheritance. For example, appellants cite *United States v. Rauscher,* 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886), in which the Court found that a defendant extradited for a particular crime pursuant to an extradition treaty with Great Britain could not be tried for an additional crime. *Rauscher* and its principles are inapposite, for extradition treaties relate to the jurisdiction of the courts over a foreign defendant; they do not provide a private right of action to enforce a political promise.

Nor do the various property and inheritance treaties provide rights beyond their terms, whereby persons may rely on treaty commitments to protect or enforce their rights. These treaty principles have been applied in varied circumstances, none comparable to the situation here. *See, e.g., Kolovrat v. Oregon,* 366 U.S. 187, 81 S.Ct. 922, 6 L.Ed.2d 218 (1961) (treaty protects alien's right to inherit property, preventing state from taking property for itself); *Cook v. United States,* 288 U.S. 102, 53 S.Ct. 305, 77 L.Ed. 641 (1933) (violation of a treaty with Great Britain preventing seizure of British vessel was a defense against action for civil penalty against ship attempting to smuggle liquor into the United States); *Ware v. Hylton,* 3 U.S. (3 Dall.) 199, 1 L.Ed. 568 (1796) (treaty allowed plaintiffs, who were British creditors, to recover debts from citizens of Virginia despite a state law canceling those debts). These treaties do not provide a private right of action to enforce an obligation between the United States and a foreign government, whether or not the plaintiff would be a beneficiary thereof.

■ The plaintiffs, apparently recognizing that precedent and custom weigh against their cause, ask that the Brown Commitment be viewed as a contract of which they are the intended third party beneficiary. However, the appellants cite no authority, and we know of none, whereby an individual has been found entitled to judicial enforcement of a government-to-government agreement on the legal theory that they are third party beneficiaries of the agreement. The district court ruled that "[t]he commitment by Ambassador Brown was made on behalf of the United States to the government of the Republic of Korea and not to the individual Korean veterans," and "because in the past payments under the Brown Commitment were made directly to the Republic of Korea and not to the individual veterans, it is clear that issues between the two nations as to the amount of the payments was

intended to be resolved by government to government negotiations." 84 F.Supp.2d at 623–24. Such negotiations are consigned to the executive branch in its conduct of foreign relations. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 589, 72 S.Ct. 512, 96 L.Ed. 586 (1952) (the conduct of foreign relations is confined to the political arms of government); *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568 (1948) (foreign policy decisions are "of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and have long been held to belong in the domain of political power not subject to judicial intrusion or inquiry"); *Oetjen v. Central Leather Co.*, 246 U.S. 297, 302, 38 S.Ct. 309, 62 L.Ed. 726 (1918).

■■■ The political question doctrine often requires "a delicate exercise in constitutional interpretation," *Baker v. Carr*, 369 U.S. 186, 211, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), based on the principle of separation of powers and the constitutional assignment of the conduct of foreign affairs to the executive branch. The doctrine requires careful case-by-case analysis. *Id. See, e.g., Regan v. Wald*, 468 U.S. 222, 104 S.Ct. 3026, 82 L.Ed.2d 171 (1984) (the issue of freedom to travel); *Dames & Moore v. Regan*, 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981) (the issue of freezing foreign assets and suspending claims); *Committee of United States Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 935 (D.C.Cir.1988) (political acts raised justiciable constitutional claims). Applying these principles, we conclude that the Brown Commitment does not raise issues of fundamental liberty interests and personal rights, but manifests its character as a government-to-government agreement within the sole authority of the Executive, and confers no private right of action. Compliance remains in the arena of foreign policy and foreign relations.

The district court determined that the standing of the plaintiffs "turns on whether the Republic of Korea has formally protested a violation of the rights of the individual plaintiffs under the Brown Commitment." *Kwan*, 84 F.Supp.2d at 619. To meet this criterion the appellants point to a letter from the Embassy of the Republic of Korea to the State Department, which raised the question of additional compensation based on exposure to Agent Orange. The letter stated that the Korean government "was not able to claim compensation in this regard during or shortly after the Vietnam conflict because the medical problems resulting from exposure to Agent Orange can only be detected after the lapse of quite a long period of time," and requests discussion of the question. The district court held that this letter was not an "official protest." However, whatever the diplomatic character of the letter and the intergovernmental relationship from which it arose, the presence or absence of an official protest has not been shown to control whether there is a private right of action for judicial enforcement of an executive agreement.

■■■ Appellants also refer to the national treatment provisions of the Treaty of Friendship, Commerce and Navigation between the United States and the Republic of Korea, 8 U.S.T. 2217 (entered into force Nov. 7, 1957). This treaty establishes, inter alia, that nationals of one country have the same access to the courts of the other as do the nationals of the other country. However, this treaty does not redefine justiciable subject matter. Although "not every case or controversy which touches foreign relations lies beyond judicial cognizance," *New Jersey v. United States*, 91 F.3d 463, 469 (3d Cir.1996) (quoting *Baker v. Carr*, 369 U.S. 186, 211, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)), the issues raised as to the Brown Commitment

are matters of foreign affairs and policy, and do not meet the criteria of judicial resolution. The district court's ruling to this effect is affirmed.

No costs.

*AFFIRMED.*