# United States Court of Appeals for the Federal Circuit

2007-1032

ROGELIO DEARCHIBOLD
(and other similarly situated individuals),

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Robert E. Goodman, Jr., of Dallas, Texas, argued for plaintiffs-appellants.

Timothy P.McIlmail, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director. Of counsel was James P. Laurence, Assistant United States Attorney, United States Attorneys Office, Northern District of Texas, of Fort Worth, Texas.

Appealed from: United States District Court for the Northern District of Texas

Judge David C. Godbey

# United States Court of Appeals for the Federal Circuit

2007-1032

ROGELIO DEARCHIBOLD
(and other similarly situated individuals),

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  September 14, 2007

_____

Before RADER, BRYSON, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Rogelio De Archibold and numerous other alleged former employees of the Army Air Force Exchange Service (AAFES) in the Republic of Panama (collectively "De Archibold") appeal the dismissal for lack of subject matter jurisdiction by the United States District Court for the Northern District of Texas.  See De Archibold v. United States, No. 03-1871, 2006 WL 763059 (N.D. Tex. Mar. 24, 2006).  We affirm.

## BACKGROUND

De Archibold brought claims in the United States Court of Federal Claims alleging that the United States is liable for amounts due to plaintiffs under Panamanian labor law as a consequence of plaintiff's employment with AAFES in Panama. According to De Archibold, the Panama Canal Treaty: Implementation of Article IV,

U.S.-Pan., Sept. 7, 1977, 33.1 U.S.T. 308 (Agreement in Implementation) requires the United States to follow Panamanian labor law when employing Panamanian nationals in Panama. See Agreement in Implementation art. VII, ¶ (2). The Court of Federal Claims concluded that it lacked jurisdiction to hear De Archibold's claims under the Tucker Act, 28 U.S.C. § 1491(a)(2) (2006), as the underlying basis for those claims was the Treaty Concerning the Permanent Neutrality and Operation of the Panama Canal, U.S.-Pan., Sept. 7, 1977, 33 U.S.T. 1 (Panama Canal Treaty), between the United States and the Republic of Panama. See De Archibold v. United States, 57 Fed. Cl. 29 (2003). Because De Archibold's claims were dependent on the Panama Canal Treaty, the CFC concluded 28 U.S.C. § 1502 expressly prohibited that court from exercising jurisdiction. De Archibold, 57 Fed. Cl. at 34.

Because De Archibold also asserted that jurisdiction was proper under 28 U.S.C. § 1331, the Court of Federal Claims transferred the case to the United States District Court for the Northern District of Texas for a determination of whether that court had subject matter jurisdiction over De Archibold's claims. De Archibold, 57 Fed. Cl. at 34. The district court found that it lacked subject matter jurisdiction over De Archibold's claims under 28 U.S.C. §§ 1331 and 1346(a)(2) and dismissed the claims. See De Archibold, 2006 WL 763059, at *2-3, 5-6.

De Archibold appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(2).

**DISCUSSION**

Whether a district court has subject matter jurisdiction over an action is a question of law that we review de novo. See Moyer v. United States, 190 F.3d 1314, 1317-18 (Fed. Cir. 1999).

De Archibold contends that the district court has jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), because the Agreement in Implementation constitutes an express contract between plaintiffs and AAFES.[1] As an alternative basis for jurisdiction, De Archibold argues that the district court has jurisdiction under 28 U.S.C. § 1331 because the Agreement in Implementation constitutes a waiver of sovereign immunity permitting suits for money damages against the United States for a violation of its terms. We address these contentions in turn.

A. *Little Tucker Act Jurisdiction*

The Little Tucker Act, 28 U.S.C. § 1346(a)(2), waives the government's sovereign immunity for, *inter alia*, claims of breach of express or implied contract brought against the United States government. See Doe v. United States, 372 F.3d 1308, 1312 (Fed. Cir. 2004) ("The pertinent portions of the . . . Little Tucker Act waive sovereign immunity for claims 'founded . . . upon any express . . . contract with the United States. . . .'"). Although Congress has waived the United States' sovereign immunity for certain contract claims against the government, we are presented with the question of whether the Agreement in Implementation is a contract falling within that

---

[1]    De Archibold only appeals the dismissal for lack of jurisdiction under section 1346(a)(2) on the theory that the Agreement in Implementation is an express contract. See Audio File: Oral Arg., De Archibold v. United States, No. 07-1032 at 2:50-4:28 (Fed. Cir. Jul. 11, 2007). In their briefing to this court, appellants did not argue that jurisdiction was proper in the district court based on an implied-in-fact contract.

waiver.  If executive agreements between sovereign nations are "express contracts" within the meaning of the Little Tucker Act, then the United States has waived its sovereign immunity for suits under executive agreements such as the Agreement in Implementation.  If these agreements between sovereign nations are not "express contracts" under the Little Tucker Act, sovereign immunity acts as a jurisdictional bar to De Archibold's claims.  See, e.g., United States v. Sherwood, 312 U.S. 584, 587-88 (1941).

To determine whether the Agreement in Implementation is an "express contract" encompassed by the Little Tucker Act's waiver of sovereign immunity, we focus on the language of this provision.  Section 1346(a)(2), like all waivers of sovereign immunity, must be "strictly interpreted."  See Sherwood, 312 U.S. at 590 (This "section must be interpreted in light of its function in giving consent of the Government to be sued, which consent, since it is a relinquishment of sovereign immunity, must be strictly interpreted.").  Any ambiguity in section 1346(a)(2) should be resolved in favor of the sovereign.  See Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 262 (1999) (The Supreme Court has "frequently held . . . that a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign" and that "[s]uch a waiver must be 'unequivocally expressed' in the statutory text.").  We cannot resort to the legislative history to find a waiver not otherwise unequivocally expressed in the statute.  See Lane v. Peña, 518 U.S. 187, 192 (1996) ("A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text."); United States v. Nordic Village, Inc., 503 U.S. 30, 37 (1992) ("[T]he 'unequivocal expression' of

elimination of sovereign immunity that we insist upon is an expression in the statutory text. If clarity does not exist there, it cannot be supplied by a committee report.").

Applying these principles to the present case, we conclude that the Little Tucker Act does not waive the United States' sovereign immunity for claims based on the Agreement in Implementation. Executive agreements, such as the Agreement in Implementation, are agreements between the United States and foreign nations. Such agreements have long been treated by the judiciary as treaties. See, e.g., Weinberger v. Rossi, 456 U.S. 23, 29-32 (1982); United States v. Belmont, 301 U.S. 324, 330-31 (1937); B. Altman & Co. v. United States, 224 U.S. 583, 597 (1912); Kwan v. United States, 272 F.3d 1360, 1362 (Fed. Cir. 2001). The Agreement in Implementation is part and parcel to the Panama Canal Treaty and constitutes a means to effectuate the United States' obligations under Article IV of that Treaty. If Congress had intended to confer jurisdiction on the federal courts for claims arising under treaties and executive agreements *carte blanche*, Congress would have clearly stated so.[2] We do not think

---

[2] That Congress viewed treaties and executive agreements differently than express contracts is indicated by congressional debates relating to an 1863 amendment to the original act creating the Court of Claims. That discussion indicates that claims based on treaties did not go directly to the Court of Claims unless referred there by Congress. CONG. GLOBE, 37th Cong., 3d Sess. 399 (1863) (comments of Sens. Sherman, Clark, and Trumbull). There was a distinction between claims arising from contracts and claims arising from treaties. Id. While some claims based on treaties were brought in the Court of Claims (before 1863, when the predecessor to 28 U.S.C. § 1502 was enacted), these claims were referred there by Congress and none of them appear to have based jurisdiction on the theory that a treaty was a contract. See, e.g., Mead v. United States, 2 Ct. Cl. 224 (1866) (constitutional taking claim based on the United States' treaty with Spain that extinguished all claims by United States citizens against Spain referred to Court of Claims by Senate); Meade v. United States, 10 U.S. Cong. Rep. C.C. 226 (1860) (constitutional taking claim based on the United States' treaty with Spain that extinguished all claims by United States citizens against Spain denied on basis that a commission had jurisdiction to provide compensation for claim); Harrison v. United States, 5 U.S. Cong. Rep. C.C. 127 (1857) (claim referred to Court of

that Congress would have used the term "express contract" to encompass international executive agreements and treaties in light of the separation of powers considerations implicated when the judiciary is asked to entertain questions that are expressly delegated to the executive as part of the executive's power to conduct foreign affairs.[3] See U.S. CONST. art. II, § 2.

We recognize that courts have referred to treaties and executive agreements between sovereign nations as contractual in nature. See, e.g., Trans World Airlines, Inc. v. Franklin Mint Corp., 466 U.S. 243, 253 (1984) ("A treaty is in the nature of a contract between nations."); Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 675 (1979) ("A treaty, including one between the United

---

Claims by Senate and arising out of legislation to effectuate certain provisions of a treaty between the United States and Spain); Thomas v. United States, 1 U.S. Cong. Rep. C.C. 7 (1856) (dismissing claim under treaty between United States and Spain, 8 Stat. 260 (Feb. 22, 1819), because the treaty provided for a board of commissioners to make a final determination on petitioner's claim); Roberts v. United States, 1 U.S. Cong. Rep. C.C. 4 (1856) (dismissing claim under treaties between United States and Spain and United States and France because proper jurisdiction was with boards of commissioners appointed pursuant to those treaties and legislation enacted by Congress).

[3] The Supreme Court has recognized that, in most cases, international treaties do not create rights that are privately enforceable in the federal courts.

> A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and honor of the governments which are parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamation, so far as the injured parties choose to seek redress, which may in the end be enforced by actual war. It is obvious that with all this the judicial courts have nothing to do and can give no redress.

Edye v. Robertson (Head Money Cases), 112 U.S. 580, 598 (1884); see also Foster v. Neilson, 27 U.S. (2 Pet.) 253, 306 (1829) ("The judiciary is not that department of the government, to which the assertion of its interests against foreign powers is confined; and its duty commonly is to decide upon individual rights, according to those principles which the political departments of the nation have established."), overruled-in-part on other grounds by United States v. Percheman, 32 U.S. (7 Pet.) 51 (1833).

States and an Indian tribe, is essentially a contract between two sovereign nations."); Santovincenzo v. Egan, 284 U.S. 30, 40 (1931) ("As treaties are contracts between independent nations, their words are to be taken in their ordinary meaning as understood in the public law of nations." (internal quotations and citation omitted)); Head Money Cases, 112 U.S. at 598 ("A treaty is primarily a compact between independent nations."); Foster, 27 U.S. (2 Pet.) at 314 ("A treaty is in its nature a contract between two nations.").  This is not dispositive on the issue of whether the United States can be sued for an alleged breach of an executive agreement or treaty under the Little Tucker Act.  Although treaties are "in the nature of a contract between nations," Trans World, 466 U.S. at 253, they are not "express contracts" within 28 U.S.C. § 1346(a)(2).  To hold otherwise would violate the principle that waivers of sovereign immunity are strictly construed in favor of the sovereign.  See Blue Fox, 525 U.S. at 262.  We conclude that in the absence of clear and unequivocal language to the contrary, treaties and international executive agreements between sovereign nations, such as the Agreement in Implementation, are not within the waiver of sovereign immunity for claims of breach of an "express contract" contained in the Little Tucker Act.[4]

---

[4]    This conclusion is in accord with the relevant legislative history.  The predecessor to the Tucker Act of 1887 was introduced in Congress in December 1854.  See An Act to Establish a Board of Commissioners for the Examination and Adjustment of Private Claims, S. 499, 33d Cong. (2d Sess. 1854) (introduced Dec. 11, 1854); An Act to Establish a Court for the Investigation of Claims Against the United States, S. 523, 33d Cong. (2d Sess. 1854) (introduced Dec. 20, 1854).  The purpose of this legislation was to "remedy an evil which ha[d] been a crying one for the last twenty of twenty-five years."  CONG. GLOBE, 33d Cong., 2d Sess. 70 (1854).  That "evil" was Congress' need to consider private claims brought by citizens against the government and enact private bills to remedy wrongs committed by the government.  Id.

The "express or implied contract" language of section 1346(a)(2) was introduced for the first time in S. 523 on December 20, 1854, although it was encompassed within the language of S. 499, which would have given the proposed board jurisdiction over

B.     *Federal Question Jurisdiction*

District courts have "original jurisdiction of all civil actions arising under the . . . treaties of the United States."  28 U.S.C. § 1331.  Section 1331 does not operate as a waiver of sovereign immunity.   Rather, a party seeking to invoke a district court's jurisdiction under that section "must identify an independent basis for the waiver of sovereign immunity" to proceed with a claim against the United States in district court. Kanemoto v. Reno, 41 F.3d 641, 644 (Fed. Cir. 1994).

De Archibold contends that the Agreement in Implementation contains provisions waiving the United States' sovereign immunity.   De Archibold specifically identifies Section 11 of Article XX as constituting a waiver of sovereign immunity.   That section provides "[c]ontractual claims against the United States Forces shall be settled in accordance with the dispute clause of the contracts, and in the absence of such clause, through presentation of claims to the United States authorities through the appropriate

---

"claims against the United States" without limitation.  See S. 499, 33d Cong. § 1. Introducing S. 499, Senator Brodhead, the bill's sponsor, stated that "Our government, in its various transactions, must of course deal with and make contracts with thousands of our citizens annually" which, when the need for adjudication of those claims arises, require the exercise of discretion that Congress' accounting officers could not exercise. CONG. GLOBE, 33d Cong., 2d Sess. 70 (1854).  This, according to Senator Brodhead, was the basis for creating a board to hear claims against the United States rather than continuing the use of congressional accounting officers.  Id.  Congress was concerned about contracts between the United States and private parties, not international treaties or executive agreements between sovereign nations entered into as a matter of diplomacy.

Following amendments, S. 499 was reintroduced as S. 523 changing the "board . . . of three commissioners to "a court . . . called the court of claims."  S. 523, 33d Cong. § 1 (2d Sess. 1854).  "An Act to Establish a Court for the Investigation of Claims Against the United States" was signed into law on February 24, 1855, 10 Stat. 612 (codified as amended at 28 U.S.C. § 1491(a)(2)).  It was not until the Tucker Act was passed that the district courts obtained jurisdiction "concurrent" with that of the prior Court of Claims. See Tucker Act of March 3, 1887, 24 Stat. 505 (codified as amended at 28 U.S.C. §§ 1346(a)(2), 1491(a)(2)).

channels." Agreement in Implementation, 33.1 U.S.T. at 345. According to De Archibold, this provision, read in light of the other provisions in Article XX of the Agreement in Implementation, necessarily provides jurisdiction over the plaintiffs claims in the courts of the United States. We disagree.

The principles of sovereign immunity that we discussed are equally applicable to our consideration of whether the Agreement in Implementation waives the United States' immunity from suit. We are mindful that waivers of sovereign immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969) (citing Sherwood, 312 U.S. 584); see also United States v. Testan, 424 U.S. 389, 399 (1976) (same). Applying these principles to the present case, we conclude that the Agreement in Implementation does not waive sovereign immunity for De Archibold's claims in federal court.

First, Section 11 of Article XX of the Agreement in Implementation applies only to "contractual claims against the United States Forces." Assuming for the sake of argument that this provision waives sovereign immunity and permits suit in United States courts, it does so only for "contractual claims against the United States forces."[5] Agreement in Implementation art. XX(11), 33.1 U.S.T. at 345. The Agreement in Implementation at issue in this case, however, is not a contract but is rather an

---

[5] The government is free to waive sovereign immunity subject to any conditions that it chooses. See Luckenbach S.S. Co. v. United States, 272 U.S. 533, 536 (1926) (stating that "the right arising from the consent [of the United States to be sued] is subject to such restrictions as Congress imposed"). Those conditions define the scope of the government's waiver. See, e.g., Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 542 (2002) ("When the sovereign at issue is the United States, we have recognized that a limitations period may be a 'central condition' if the sovereign's waiver of immunity."); Lehman v. Nakshian, 453 U.S. 156, 161 (1981) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.").

international executive agreement between sovereigns akin to a treaty. Because we must strictly construe the term "contract claims" in favor of the government, Blue Fox, 525 U.S. at 262, we cannot assume that the "contract claims" that are referred to in Section 11 of Article XX include claims under the Agreement in Implementation itself.

Second, the provision De Archibold relies on states that the method for seeking redress in the absence of a dispute clause (a condition met here) is "presentation of claims to the United States authorities through the appropriate channels." Agreement in Implementation art. XX(11), 33.1 U.S.T. at 345. There is no indication that "presentation of claims to the United States authorities through appropriate channels" contemplates suit in federal court.[6] As recognized by the district court, this provision could include diplomatic channels or presentation to the Joint Committee for subsequent presentation to "appropriate authorities of the United States Forces for settlement," as specified for non-contractual claims under Article XX, Section 8; although neither of these channels are specified in section 11. See De Archibold, 2006 WL 763059, at *3. In essence, what De Archibold would have us do is to infer from the language "appropriate channels" that the United States has consented to suit in federal court. This we cannot do. See King, 395 U.S. at 4 (stating that "a waiver [of sovereign immunity] cannot be implied but must be unequivocally expressed"). Therefore, we agree with the district court that it does not have jurisdiction under 28 U.S.C. § 1331 over De Archibold's claims.

---

[6] In fact, Article XX permits civil suits in the civil courts of the Republic of Panama. See Agreement in Implementation art. XX(6), 33.1 U.S.T. at 344. Thus, if the drafters of the Agreement in Implementation intended to permit claims against the United States in United States court, they could have stated it expressly.

**CONCLUSION**

The district court lacked jurisdiction over De Archibold's claims arising out of the Panama Canal Treaty and the Agreement in Implementation under both the Little Tucker Act and section 1331. Accordingly, the district court's dismissal for lack of jurisdiction is

<u>AFFIRMED</u>.