Jesus C. **HERNANDEZ,**
et al., **Plaintiffs,**

v.

The **UNITED STATES** of America,
et al., **Defendants.**

No. **EP–11–CV–027–DB.**

United States District Court,
W.D. Texas,
El Paso Division.

Aug. 11, 2011.

Maria Guadalupe Guere Bentacour, pro se.

Robert C. Hilliard, Rudy Gonzales, Jr., Hilliard Munoz Gonzales, LLP, Corpus Christi, TX, Cristobal M. Galindo, Cristobal Galindo, PC, Houston, TX, for Plaintiffs.

Harold E. Brown, Jr., Assistant U.S. Attorney, San Antonio, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

DAVID BRIONES, Senior District Judge.

On this day, the Court considered Defendant the United States of America's ("the United States" or "the Government") "Motion to Dismiss the First Through Ninth and Eleventh Claims of the Plaintiffs' Original Complaint," filed in the above captioned cause on June 6, 2011, under Federal Rule of Civil Procedure 12(b)(1).[1] Therein, the Government petitions the Court to dismiss with prejudice Plaintiffs Jesus C. Hernandez, *et al.*'s First through Ninth and Eleventh claims filed in Plaintiffs' Original Complaint for lack of subject matter jurisdiction. Also before the Court are Plaintiffs' Response[2] and the Government's Reply filed June 20, and June 28, 2011, respectively. For the reasons stated below, the Court is of the opinion that the Government's Motion should be granted.

### FACTS AND PROCEDURAL POSTURE

On Monday, June 7, 2010, fifteen-year-old Sergio Adrian Hernández Güereca ("Hernández") and a group of friends were playing in the cement culvert that separates the United States from Mexico near the Paso Del Norte Port of Entry, one of four international ports of entry linking El Paso, Texas, with Ciudad Juarez, Chihuahua, Mexico. The young boys were playing a game in which they would touch the barbed-wire fence between the United States and Mexico and then run back down the incline. While playing, United States Border Patrol Agent, Jesus Mesa, Jr., aka Jesus Meza, Jr. ("Agent Mesa"), detained one of the boys. Hernandez retreated to the Mexican side of the border and observed Agent Mesa from underneath a pillar of the international bridge. Agent Mesa then pointed his weapon at Hernandez and shot his firearm across the border at least twice. Hernandez was fatally in-

---

1. The United States files this Motion on behalf of itself, its agencies, Agent Jesus Mesa, and unknown federal agents as to claims under the Federal Tort Claims Act and the Alien Tort Statute.

2. The Court construes the Plaintiffs' Response as a Motion for Leave to Amend Pleadings.

jured, having been shot at least once in the face. Additional United States Border Patrol agents subsequently arrived on the scene, but failed to render aid to Hernandez. All agents then left the scene. Eventually, Mexican police arrived and pronounced Hernandez dead.

On January 17, 2011, Plaintiffs filed their Original Complaint with the Court alleging that the Government, unknown federal employees, and various federal agencies[3] were liable under the Federal Tort Claims Act ("FTCA"), the Alien Tort Statute ("ATS"), and the United States Constitution for Hernandez's death. On June 8, 2011, Plaintiffs filed an Amended Complaint, which is different from the Original Complaint in two regards: (1) it names Agent Mesa and (2) it describes how Plaintiffs would serve process upon Agent Mesa.

On June 9, 2011, the Court entered an order granting the Government leave to file the instant Motion in excess of ten pages and held that Plaintiffs' First Amended Complaint did not moot the Government's Motion to Dismiss. On June 18, 2011, Plaintiffs filed their Motion for Leave to file their Second Amended Complaint. On June 27, 2011, the Court granted Plaintiffs' Motion for Leave to file their Second Amended Complaint and held that Plaintiffs' Second Amended Complaint also did not moot the instant Motion.

The claims before the Court on this Motion are Claims One through Nine and Eleven. Plaintiffs bring their First through Seventh Claims under the FTCA. The First Claim alleges wrongful death under the FTCA against the United States based on assault and battery; the Second Claim alleges wrongful death under the FTCA against the United States based on

negligence; in their Third Claim, Plaintiffs allege under the FTCA that Agent Mesa, acting in his official capacity, used excessive and deadly force against Hernandez; the Fourth Claim is under the FTCA and alleges that unknown federal agents, acting in their official capacity, negligently adopted policies that violated Plaintiffs' constitutional rights; the Fifth Claim is against the United States for negligent failure to adopt policies to protect Hernandez's constitutional rights under the FTCA; in their Sixth Claim, Plaintiffs bring a cause of action against the United States under the FTCA for intentionally failing to adopt policies that would prevent a violation of Plaintiffs' constitutional rights; and the Seventh Claim alleges a cause of action against the United States under the FTCA for intentionally failing to adopt policies to prevent a violation of Plaintiffs' constitutional rights.

Plaintiffs bring their Eighth and Ninth Claims under the United States Constitution. Under the Eighth Claim, Plaintiffs allege that the United States violated Plaintiffs' Fourth and Fifth Amendment rights, while Claim Nine alleges that the United States failed to adopt policies that would have prevented a violation of Hernandez's Fourth and Fifth Amendment Rights. Finally, Plaintiffs bring their Eleventh Claim under the law of nations against all Defendants, invoking the Court's jurisdiction under the ATS. The Court now addresses the instant Motion.

## STANDARD

The Government files the instant Motion under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), averring that the Court lacks subject matter jurisdiction

---

**3.** Plaintiffs have sued the following federal agencies: the United States Department of Homeland Security, the United States Bureau of Customs and Border Protection, the United States Border Patrol, the United States Immigration and Customs Enforcement Agency and the United States Department of Justice.

over claims against the United States. A motion under Rule 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). The party asserting jurisdiction bears the burden of proving that jurisdiction exists. *Id.* If the party asserting jurisdiction does not meet its burden, the court must dismiss the action. *See* Fed R. Civ. P. 12(h)(3). A court should only grant a motion to dismiss for subject matter jurisdiction "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

## DISCUSSION

The Government argues that Plaintiffs' First through Ninth and Eleventh claims should be dismissed because (1) the United States is the only proper Defendant as to those claims; (2) the United States has not waived sovereign immunity for Plaintiffs' claims under the FTCA because those claims arose in a foreign country; and (3) the United States has not waived sovereign immunity for Plaintiffs' claims under the ATS. Plaintiffs respond that the Court has subject matter jurisdiction over Plaintiffs' FTCA claims because those claims did not arise in a foreign country. Moreover, Plaintiffs aver that the ATS does waive the United States' sovereign immunity and cite *Rasul v. Bush*, 542 U.S. 466, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004), for that proposition. Finally, Plaintiffs seek leave to amend their pleadings a third time.

The Government replies that Plaintiffs' Response lacks merit as Plaintiffs have mischaracterized the United States Supreme Court's ("the Supreme Court") interpretation of *Sosa v. Alvarez–Machain*, 542 U.S. 692, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004), in arguing that Plaintiffs' FTCA claims did not arise in a foreign country. Further, the Government contends that the Supreme Court did not hold in *Rasul* that the ATS waives the United States' sovereign immunity, but that custody at Guantanamo Bay, Cuba is not a bar to jurisdiction under the ATS. Finally, the Government does not address Plaintiffs' request for leave to amend their pleadings. The Court evaluates the Parties' arguments below.

As a preliminary matter, the Court notes that the United States is indeed the only party defendant as to Plaintiffs' FTCA and ATS claims. "Under the Westfall Act [28 U.S.C. § 2679(b)(1) ], federal employees have absolute immunity from suit for common-law tort claims related to acts undertaken within the scope of their federal employment." *Dolenz v. Fahey*, 298 Fed.Appx. 380, 381 (5th Cir.2008). "[T]he Westfall Act provides that, if the Attorney General or his designee certifies that a federal employee was acting within the scope of his employment when an alleged act or omission occurred, then the lawsuit automatically is converted to one against the United States under the Federal Tort Claims Act, the federal employee is dismissed as a party, and the United States is substituted as the defendant." *In re Iraq & Afghan. Detainees Litig.*, 479 F.Supp.2d 85, 110 (D.D.C.2007); *see also* 28 § 2679(d)(1) (West 2011). Courts have applied the Westfall Act to claims under the ATS asserting violations of the law of nations. *See In re Iraq & Afghan. Detainees Litig.*, 479 F.Supp.2d at 112.

On June 20, 2011, the United States filed a "Notice of Substitution and Application for Order Thereon," wherein the Government agreed to substitute for Agent Mesa by operation of law as party defendant as to all of Plaintiffs' claims sounding in common law tort under the FTCA and the ATS pursuant to 28 U.S.C. § 2679. Plaintiffs did not oppose this substitution. Indeed, in their Response to the instant

Motion, Plaintiffs state that "[n]ow that the United States has moved for substitution and filed the appropriate certification to the Court, Plaintiffs do not oppose substitution." Therefore, the Court granted the Government's request, and in an Order dated June 24, 2011 ("June 24 Order"), the Court dismissed all claims against Agent Mesa under the FTCA and ATS. The result of the Court's June 24 Order is that the United States is now the only party defendant as to all of Plaintiffs' claims under the FTCA and ATS. Having established that the United States is the only party defendant as to all of Plaintiffs' claims, the Court now turns to the question of whether the United States has waived its sovereign immunity for Plaintiffs' claims.

## I. Whether the United States waived its Sovereign Immunity for Plaintiffs' Claims

■■■ "Liability may be imposed upon the United States only if two requirements are met: (1) there must be a waiver of sovereign immunity; and (2) there must be a source of substantive law that provides a claim for relief." *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 260 (5th Cir.2006) (Dennis, J., concurring). With respect to federal sovereign immunity, " '[t]he basic rule ... is that the United States cannot be sued at all without the consent of Congress.' " *Freeman v. United States*, 556 F.3d 326, 334–35 (5th Cir.2009) (quoting *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983)). "Plaintiffs bear the burden of showing Congress's unequivocal waiver of

sovereign immunity." *Id.* at 334 (internal quotation omitted). "Because sovereign immunity is jurisdictional in nature ... Congress's waiver of it must be unequivocally expressed in statutory text and will not be implied...." *Id.* (internal quotations and citations omitted). Therefore, it follows that a federal court lacks subject matter jurisdiction over claims for which Congress has not waived sovereign immunity. *Id.* The Court first examines whether Congress has waived sovereign immunity for Plaintiffs' claims under the FTCA.

### A. Sovereign Immunity under the FTCA

■■■ The FTCA allows a person to sue the United States for the negligence or other tortious conduct of its employees acting within the scope of employment in situations where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the tort occurred. 28 U.S.C.A. § 1346(b)(1) (West 2011). Therefore, the statute is both a waiver of the United States' sovereign immunity and a source of substantive law that imposes liability on the Government for the torts of its employees under certain circumstances.[4] *In re Supreme Beef Processors, Inc.*, 468 F.3d at 260 (Dennis, J., concurring); *see also* 28 U.S.C.A. §§ 1346(b)(1), 2674. This waiver is not unlimited, however, and for policy reasons, Congress decided that the FTCA would also categorically exclude liability for some harms. *In re Supreme Beef Processors, Inc.*, 468 F.3d at 260–61 (Dennis, J., concurring). For example, Congress precluded Government liability when a

4. The statute provides in relevant part that "the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Govern-

ment while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." § 1346(b)(1).

United States employee exercises a discretionary function. 28 U.S.C.A. § 2680(a) (West 2011). Moreover, Congress has immunized Government employees from intentional torts, except when the intentional tort was committed by an investigative or law enforcement officer of the United States. § 2680(h). Finally, Congress conferred immunity on Government employees against liability from torts arising in a foreign country. § 2680(k).

Although the FTCA's foreign country exception clearly states that the provisions of the FTCA do not apply to "[a]ny claim arising in a foreign country," prior to 2004, some federal courts allowed plaintiffs' claims to withstand a motion to dismiss if plaintiffs could show that the act or omission giving rise to a tort occurred in the United States even when the claimant suffered injuries abroad. *See e.g. Mulloy v. United States,* 884 F.Supp. 622, 632 (D.Mass.1995). Nevertheless, in 2004, in *Sosa,* the Supreme Court unequivocally held that "the FTCA's foreign country exception bars all claims based on an injury suffered in a foreign country, regardless of where the tortious act or omission occurred." 542 U.S. at 712, 124 S.Ct. 2739. Notwithstanding the Supreme Court's unambiguous directive, Plaintiffs argue that *Sosa* does not control the case at bar. Therefore, the Court must first determine whether it is bound by *Sosa's* clear holding in the instant cause.

In *Sosa,* Drug Enforcement Administration ("DEA") agents hired Jose Francisco Sosa ("Sosa") to abduct Mexican physician Humberto Alvarez–Machain ("Alvarez") in Mexico to stand trial in federal court in the United States because Alvarez assisted in torturing a fellow DEA agent. *Id.* at 697–98, 124 S.Ct. 2739. Alvarez was acquitted of the federal criminal charges but subsequently filed a civil action against Sosa under the FTCA and ATS. The district court dismissed Alvarez's FTCA claim but awarded summary judgment and damages on Alvarez's ATS claim. *Id.* at 699, 124 S.Ct. 2739. A three judge panel of the United States Court of Appeals for the Ninth Circuit ("the Ninth Circuit") affirmed the ATS claim but reversed the district court's dismissal of the FTCA claim; a divided en banc panel of the Ninth Circuit came to the same conclusion. *Id.* In reaching its holding on Alvarez's FTCA claim, the Ninth Circuit relied on the "headquarters doctrine." *Id.* at 701, 124 S.Ct. 2739. Under the headquarters doctrine, "the foreign country exception [to the FTCA] does not exempt the United States from suit for acts or omissions occurring [in the United States] which have their operative effect in another country." *Id.* (internal quotations omitted). Thus, the Ninth Circuit reasoned "that[ ] since Alvarez's abduction in Mexico was the direct result of wrongful acts of planning and direction by DEA agents located in California, 'Alvarez's abduction fits the headquarters doctrine like a glove.' " *Id.* at 702, 124 S.Ct. 2739 (quoting *Alvarez–Machain v. U.S.,* 331 F.3d 604, 638 (9th Cir. 2003) (en banc)). Thus, based on the headquarters doctrine, the Ninth Circuit held that Alvarez's claim did not arise in a foreign country. *Id.*

The Supreme Court reversed, rejecting the Ninth Circuit's interpretation of the foreign country exception. *Id.* at 712, 124 S.Ct. 2739. In reaching this conclusion, the Supreme Court found reason to be skeptical of the Ninth Circuit's reliance on the headquarters doctrine because proximate cause[5] was needed to "connect the domestic breach of duty (at headquarters)

---

**5.** The Supreme Court defined proximate cause as "causation substantial enough and close enough to the harm to be recognized by law" and found that "a given proximate cause need not be, and frequently is not, the exclu-

with the action in the foreign country ... producing the foreign harm or injury." *Id.* at 703, 124 S.Ct. 2739. The Supreme Court expressed doubt that the acts of the DEA agents sitting in California were proximate causes of Alvarez's harm, given that "the actions of Sosa and others in Mexico were just as surely proximate causes, as well." *Id.* at 704, 124 S.Ct. 2739.

Regardless, the Supreme Court reached its decision in *Sosa* "simply because the harm occurred on foreign soil." *Id.* at 703, 124 S.Ct. 2739. The Supreme Court explained that when Congress passed the FTCA, "the dominant principle in choice-of-law analysis for tort cases was *lex loci delicti:* courts generally applied the law of the place where the injury occurred." *Id.* at 705, 124 S.Ct. 2739. As a result, if the injury occurred in a foreign country, a federal court in the United States would have to apply foreign law to determine the tortfeasor's liability, and applying foreign substantive law in a federal court is precisely what Congress wanted to avoid in passing the foreign country exception to the FTCA. *Id.* at 706–07, 124 S.Ct. 2739. Further, the Supreme Court found that even if a federal court did not have to apply the tort law of a foreign nation, a claimant injured in a foreign country would still be barred from bringing a claim against the United States because Congress did not write the foreign country exception to apply only "when foreign law would be applied." *Id.* at 711, 124 S.Ct. 2739. Therefore, the Supreme Court held that "the FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." *Id.*

■ Here, Plaintiffs ask the Court to ignore *Sosa's* explicit holding because un-

like in *Sosa,* where the Supreme Court expressed doubt about whether the proximate cause of Alvarez's harms had occurred in the United States, in the instant cause "[i]t is indisputable that each and every proximate cause of [Hernandez's] injuries and death occurred on United States territory." Even if each and every proximate cause of Hernandez's injuries occurred on United States territory, the Supreme Court also reached its holding in *Sosa* simply because the harm occurred on foreign soil. *See id.* at 703, 124 S.Ct. 2739. Therefore, the Court is of the opinion that if Hernandez suffered his injuries in Mexico—a foreign country—the Court would lack subject matter jurisdiction to hear Plaintiffs' FTCA claims given *Sosa's* clear holding. Yet, Plaintiffs also argue that Hernandez did not suffer his injuries in Mexico. The Court must therefore determine where Hernandez suffered his injuries.

Plaintiffs concede that Hernandez was standing underneath the Mexican side of the Paso Del Norte Bridge when Agent Mesa shot him. Nevertheless, Hernandez argues that the assault "occurred on United States' [sic] territory" because once Agent Mesa cocked his gun and put his finger on the trigger, it was not necessary for the bullet to strike Hernandez to "invoke assault." The United States replies that because Hernandez was standing in Mexico when he perceived Agent Mesa's threat, Hernandez suffered any injury in Mexico and not the United States. The Court thus examines what is required to state a claim for civil assault under Texas law to determine whether Plaintiffs properly characterize the injury as one occurring in the United States and not Mexico.

■ Under Texas law, a plaintiff must establish the elements of criminal

sive proximate cause of harm." *Sosa,* 542 U.S. at 704, 124 S.Ct. 2739.

assault to state a claim for civil assault. *See Johnson v. Davis,* 178 S.W.3d 230, 240 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). The Texas Penal Code provides for three categories of assault. *See* Tex. Penal Code Ann. § 22.01 (West 2011). Here, Plaintiffs bring their claims under a type of assault called "assault-by-threat." *Olivas v. Texas,* 203 S.W.3d 341, 345 (Tex. Crim.App.2006). A person commits an assault-by-threat when he "intentionally or knowingly threatens another with imminent bodily injury" Tex. Penal Code Ann. § 22.01(a)(2) (West 2011). For the State to convict a defendant of criminal assault, the State must prove that a threat occurred but the State need not necessarily prove that the victim perceived the threat. *Olivas,* 203 S.W.3d at 346; *Teeter v. Texas,* No. PD–1169–09, 2010 WL 3702360, at *6 (Tex.Crim.App. Sept. 22, 2010). In contrast, under civil assault, "the victim must be shown factually to have experienced apprehension or fear." *See Olivas,* 203 S.W.3d at 346–47. In determining whether a civil assault has occurred, courts will look at the physical distance between the victim and the alleged perpetrator to determine whether the victim felt the harm of the assault. *See Vietnamese Fishermen's Ass'n v. Knights of Ku Klux Klan,* 518 F.Supp. 993, 1012 (S.D.Tex.1981) ("There is no assault where the defendant is too far away to do any harm.").

Here, Plaintiffs aver that "[t]he assault against [Hernandez's] rights occurred at the very moment that Agent Mesa lifted his gun, pointed it at [Hernandez's] head and pulled the trigger." Yet any rights Hernandez may have had were held in Mexico since Hernandez was standing in Mexico when Agent Mesa allegedly perpetrated the assault. Moreover, the fact that

courts look to (1) whether the victim apprehended the assault, *Olivas,* 203 S.W.3d at 346–47, and (2) the physical distance between the victim and the alleged perpetrator of the assault to determine whether an assault has occurred, *Vietnamese Fishermen's Ass'n,* 518 F.Supp. at 1012, further supports the conclusion that the injury in an assault occurs where and when the victim perceives the assault. Therefore, the weight that Plaintiffs place on the *moment* when the assault occurred is misguided and irrelevant for the purpose of determining *where* Hernandez suffered his injury.

 Finally, to the extent that Plaintiffs argue that civil assault-by-threat can be proven under Texas law without establishing that a plaintiff experienced fear or apprehension would run afoul of the standing requirements of the federal courts. "Standing to sue in any Article III court is ... a federal question which does not depend on the party's prior standing in state court." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). To have standing to sue in federal court, a plaintiff must have suffered an "injury in fact—an invasion of a legally protected interest which is ... concrete and particularized." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way." *Id.* at 561 n. 1, 112 S.Ct. 2130. The only way that Hernandez could have been affected in a "personal and individual way" is if he felt the harm of the assault; because Hernandez was standing in Mexico when Agent Mesa allegedly assaulted him, there was no other place where he could have felt the harm.[6] As

---

**6.** Plaintiffs also argue that Hernandez's negligence claim is cognizable in this case because "the last act necessary to establish negligence against Agent Mesa and the United States

occurred in the United States" Plaintiffs misstate the law of negligence. To state a claim in negligence, a plaintiff must prove "a legal

such, the Court finds that Hernandez suffered his harms in Mexico.

■ Having decided that *Sosa* applies to the case at bar and that Hernandez suffered his injuries in Mexico, the Court now grants the Government's Motion to Dismiss Plaintiffs' First through Seventh Claims because Congress did not waive the United States' sovereign immunity for injuries suffered in a foreign country, "regardless of where the tortious act or omission occurred." *Sosa*, 542 U.S. at 712, 124 S.Ct. 2739.

### B. Sovereign Immunity for Constitutional Torts

■ The United States next argues that Plaintiffs' Eighth and Ninth Claims should be dismissed because the United States has not waived sovereign immunity for constitutional torts under the FTCA. Plaintiffs concede that the United States is not a proper party as to these claims. Therefore, the Court grants the United States' Motion as to the Eighth and Ninth Claims in Plaintiffs' Second Amended Complaint because it agrees that the United States has not waived its sovereign immunity for constitutional torts under the FTCA. *See Spotts v. United States*, 613 F.3d 559, 569 n. 7 (5th Cir.2010).

### C. Sovereign Immunity and the ATS

■ Finally, the Court determines whether the ATS waives the United States' sovereign immunity. The ATS is a jurisdictional statute, conferring jurisdiction upon the federal courts to "hear claims in a very limited category defined by the law of nations and recognized at

common law." *Sosa*, 542 U.S. at 712, 124 S.Ct. 2739. Because "Congress's waiver of [sovereign immunity] must be unequivocally expressed in statutory text and will not be implied," *Freeman*, 556 F.3d at 334–35, the Court looks first to the statutory language to determine if it waives the United States' sovereign immunity. The statute provides that "[t]he district court shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C.A. § 1350 (West 2011). It is patent from the statute's plain language that a waiver of sovereign immunity is not "unequivocally expressed" as the ATS says nothing about sovereign immunity or a waiver. *See Canadian Transport Co. v. United States*, 663 F.2d 1081, 1092 (D.C.Cir.1980); *see also Industria Panificadora, S.A. v. United States*, 957 F.2d 886, 887 (D.C.Cir.1992) (per curiam), *cert. denied* 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992). Notwithstanding the plain language of the statute, Plaintiffs insist that the ATS waives the United States' sovereign immunity because the Supreme Court pronounced in *Rasul*, that "indeed, [the ATS] explicitly confers the privilege of suing for an actionable tort committed in violations of the law of nations or a treaty of the United States on aliens alone." 542 U.S. at 485, 124 S.Ct. 2686 (internal quotation omitted). Plaintiffs fundamentally misapprehend the holding in *Rasul.*

In *Rasul*, the Supreme Court decided "the narrow but important question whether United States courts lack jurisdiction to consider challenges to the legality of the

---

duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex.2002). Here, Plaintiffs Second Amended Complaint states that Plaintiff was standing in Mexico when Agent Mesa allegedly shot and killed him. As such, it is

undisputed that the damages, the last act needed to state a claim in negligence, occurred in Mexico. Therefore, the Court finds the FTCA's foreign country exception bars Plaintiffs' negligence claims against the United States, its officers and agencies.

detention of foreign nationals captured abroad in connection with hostilities and incarcerated at the Guantanamo Bay Naval Base, Cuba." *Id.* at 470, 124 S.Ct. 2686. Petitioners in *Rasul* sued former President George W. Bush, among other federal employees, invoking the jurisdiction of the United States District Court for the District of Columbia ("District Court") under the ATS. The District Court dismissed the petitioners' ATS claim and the United States Court of Appeals for the District of Columbia Circuit held that "the District Court correctly dismissed the claims founded on ... [the ATS] for lack of jurisdiction, even to the extent that these claims 'deal only with conditions of confinement and do not sound in habeas,' because petitioners lack the 'privilege of litigation' in U.S. courts." *Id.* at 484, 124 S.Ct. 2686. (quoting *Al Odah v. United States,* 321 F.3d 1134, 1144 (D.C.Cir.2003)). Nevertheless, the Supreme Court reversed, holding that the District Court did have jurisdiction to hear the ATS claim and that the petitioners' confinement in military custody at Guantanamo Bay, Cuba was immaterial to the question of whether the District Court had subject matter jurisdiction over those claims. *Id.* at 485, 124 S.Ct. 2686. The Supreme Court in *Rasul* said nothing about whether Congress waived the United States' sovereign immunity in the ATS.[7]

 Here, Plaintiffs confuse federal jurisdiction with a waiver of sovereign immunity. While the Court may have jurisdiction to hear claims under the ATS because the ATS is merely a jurisdictional statute, "any party asserting jurisdiction under the [ATS to sue the United States] must establish, independent of that statute, that the United States has consented to suit." *Tobar v. United States,* 639 F.3d 1191, 1196 (9th Cir.2011) (internal quotations omitted) (holding that the ATS does not waive the United States' sovereign immunity). Moreover, if the United States waives its sovereign immunity in a treaty, the waiver must be unequivocally expressed. *See De Archibold v. United States,* 499 F.3d 1310, 1313 (Fed.Cir.2007). Yet, Plaintiffs cite no language in any of the treaties that form the substantive basis for Plaintiffs' ATS claim that indicate that the United States has waived its sovereign immunity for suits in federal court under those treaties. Without more, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' claims under the ATS and, as such, grants the Government's Motion as to the Eleventh Claim.

## II. Plaintiffs' Construed Motion to Amend Pleadings

Having decided that the Court lacks jurisdiction as to all of Plaintiffs' claims against the United States, the Court now addresses Plaintiffs' construed Motion to Amend Pleadings. Here, Plaintiffs seek leave to amend their Second Amended Complaint to refashion claims against the United States as claims against unknown federal agents under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

 A party may amend its pleading once as a matter of course within twenty-one days of serving it or twenty-one days after service of a motion under Rule 12(b),

---

7. The Court is not alone in this conclusion; indeed, the Court knows of no case decided before or after *Rasul* to have ever held that the ATS waives the United States' sovereign immunity; nevertheless, the case reporters are replete with examples of cases finding unambiguously that the ATS does not waive the United States' sovereign immunity. *See*

*e.g. Sanchez–Espinoza v. Reagan,* 770 F.2d 202, 207 (D.C.Cir.1985); *Goldstar (Panama) S.A. v. United States,* 967 F.2d 965, 967–68 (4th Cir.1992); *Rosner v. United States,* 231 F.Supp.2d 1202, 1210 (S.D.Fla.2002); *Czetwertynski v. United States,* 514 F.Supp.2d 592, 596 (S.D.N.Y.2007); *Al–Aulaqi v. Obama,* 727 F.Supp.2d 1, 43 (D.D.C.2010).

whichever is earlier. FED.R.CIV.P. 15(a)(1). In all other cases, a party may only amend its pleadings with the written consent of the opposing party or with the court's leave. FED.R.CIV.P. 15(a)(2). Courts must "freely give leave when justice so requires." FED.R.CIV.P. 15(a)(2). Although Rule 15(a) creates a liberal standard for granting leave to amend a complaint, some factors weigh against granting leave. *Barnes v. Madison*, 79 Fed.Appx. 691, 698 (5th Cir.2003). These factors, articulated in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Id.* (internal quotations omitted).

In the instant cause, Plaintiffs amended their pleadings once as a matter of right and a second time with the Court's leave. The Court now finds that it would serve the interest of justice to allow Plaintiffs leave to file a third amended complaint. Nevertheless, the Court cautions the Plaintiffs, in the strongest terms possible, that it will not grant Plaintiffs leave to amend their complaint a fourth time.

### III. Severance of Claims against the United States

 Finally, the Court *sua sponte* considers whether the claims against the United States should be severed from those against Agent Mesa. Federal Rule of Civil Procedure 21 ("Rule 21") provides in relevant part that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED.R.CIV.P. 21. "Rule 21 is an appropriate vehicle to sever or dismiss the claims of even properly joined parties." *Blum v. Gen. Elec. Co.*, 547 F.Supp.2d 717, 722 (W.D.Tex.2008). By severing claims under Rule 21, a district court creates two separate actions by which severed claims may proceed as discrete, independent actions. *Allied Elevator, Inc. v. E. Tex. State Bank*, 965 F.2d 34, 36 (5th Cir.1992). District courts may then render final judgment in "either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other." *Id.* (internal quotation omitted). Ultimately, district courts have broad discretion to sever claims under Rule 21. *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir.1994).

 In the instant Order, the Court dismisses all claims against the United States. As such, if the Court severs the claims against the United States, the Court may enter final judgment and allow Plaintiffs to appeal the instant Order, if they so choose, without having to wait for a resolution on their *Bivens* claims against Agent Mesa. Therefore, the Court finds that the claims against the United States should be severed from those against Agent Mesa and all unknown agents.

### CONCLUSION

After due consideration, the Court finds that the Government's Motion should be granted in its entirety. The United States is party defendant as to all claims against Agent Mesa under the FTCA and the ATS. Moreover, Congress has not waived the United States' sovereign immunity under the FTCA when the tort arises in a foreign country. Because the harm that Plaintiffs allege under the FTCA was felt in Mexico, Plaintiffs' tort claims under the FTCA arose in a foreign country, therefore the Court dismisses Claims One through Seven. Further, the United States has not waived sovereign immunity for constitutional torts under the FTCA. As such, the Court dismisses Claims Eight

and Nine. In addition, Congress did not waive the United States' sovereign immunity under the ATS, and none of the treaties that form the substantive basis of Plaintiffs' ATS claims unequivocally waive the United States' sovereign immunity. It therefore follows that the Court must dismiss Plaintiffs' Eleventh Claim.

The Court also grants Plaintiffs leave to amend their pleadings and finds that it would be in the interest of justice to grant Plaintiffs' construed Motion for Leave to Amend Pleadings. Finally, the Court finds that all claims against the United States should be severed from those against Agent Mesa and all unknown federal agents such that final judgment may be entered as to the United States.

Accordingly, **IT IS HEREBY ORDERED** that Defendant the United States of America's "Motion to Dismiss the First Through Ninth and Eleventh Claims of the Plaintiffs' Original Complaint," is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs Jesus C. Hernandez, *et al.*'s construed Motion to Amend the Second Amended Complaint is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend their Second Amended Complaint within ten days of the date of this Order.

**IT IS FURTHER ORDERED** that all claims asserted against Defendants the United States of America, the United States Department of Homeland Security, the United States Bureau of Customs and Border Protection, the United States Border Patrol, the United States Immigration and Customs Enforcement Agency and the United States Department of Justice be **SEVERED** from those claims against Jesus Mesa, Jr. and all unknown Defendants.

**IT IS FURTHER ORDERED** that the Clerk of the Court **AMEND** the caption in the present action to reflect that claims against Defendant Jesus Mesa, Jr. and all unknown Defendants are no longer included within the above-captioned cause.

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED.**

**IT IS FINALLY ORDERED** that all other pending motions in the above-captioned cause, if any, are **DENIED AS MOOT.**